UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

CHRISTOPHER WIDNER,                )
                                   )
       Plaintiff,                  )
                                   )
                                   )
v.                                 )   No. 3:09-CV-463
                                   )   (PHILLIPS/GUYTON)
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
       Defendant.                  )

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 11 and 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 and 16]. Plaintiff Christopher Widner seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On June 27, 2006, the Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income, claiming a period of disability which began June 1, 2004.[1] [Tr. 12]. After his application was denied initially and also denied upon

---

[1] The Plaintiff is not eligible for disability benefits prior to the date he filed his application, see 20 C.F.R. § 416.202(g). Thus, the Commissioner and the ALJ have treated **June 27, 2006**, as the date of the alleged onset of disability.

reconsideration, Plaintiff requested a hearing. On July 15, 2008, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 672-702]. On February 18, 2009, the ALJ found that Plaintiff was not disabled. The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

**I.     ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since June 27, 2006, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: hypertension, anxiety, osteoarthritis, status post fracture of the right wrist, avascular necrosis, and sacrolitis (20 CFR 416.921 *et seq*.).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967.

5. The claimant is capable of performing past relevant work as an escort driver. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant was born on April 7, 1969 and was 37 years old, which is defined as a "younger individual[,"] on the date the application was filed (20 CFR 416.963).

7. The claimant has a "limited" education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of

disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See Social Security Ruling 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. In the alternative[,] considering the claimant's age, education, work experience, and residual functional capacity, the claimant can perform unskilled light jobs including hand packager, production worker, and inspector/testor/sorter/sampler, and weigher. The jobs exist in significant numbers with 3, 047 in the local economy and 87,698 in the nation. They are performed consistent with the information contained in the <u>Dictionary of Occupational Titles</u>.

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 27, 2006, the date the application was filed (20 CFR 416.920(g)).

[Tr. 14-20].

## II. DISABILITY ELIGIBILITY

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are

supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the

merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. ANALYSIS

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's disability determination. Plaintiff contends the ALJ erred by failing to accord proper weight to the opinion of Charles H. DeBusk, M.D. [Doc. 12 at 9]. The Commissioner, in response, contends substantial evidence supports the ALJ's disability determination. [Doc. 16 at 1].

### A. Background

The Plaintiff has received primary care from Dr. DeBusk since 1998. The Plaintiff has recounted the entirety of his visitation history with Dr. DeBusk, which the Court has reviewed.

Between 1998 and 2006, the Plaintiff saw Dr. DeBusk for back, hip, leg, and knee pain, blood pressure checks, and other routine medical treatment.[2] In the period relevant to this decision, the Plaintiff was also seen by Dr. DeBusk to address various medical issues, which the Court will discuss more fully below, and on July 28, 2008, Dr. DeBusk filled out two forms addressing the

---

[2]These visits were addressed by two previous disability applications that appear to have been filed in 1999 and 2004. [See Tr. 89, 676]. The issue presently before the Court is whether the Plaintiff was disabled between June 27, 2006, the date of the Plaintiff's application, through February 18, 2009, the date of the ALJ's decision.

6

Plaintiff's impairments: (1) a form regarding whether the Plaintiff met the criteria contained in Section 1.02 of the Social Security Administration's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, (hereinafter "the Section 1.02 Form"); and (2) a form entitled "Medical Assessment of Ability to Do Work-Related Activities (Physical)," (hereinafter "the Medical Assessment Form").

The Section 1.02 Form states that counsel has enclosed a copy of Section 1.02, and then asks the physician to whom it is presented "[D]oes one or more of these listings accurately describe the patient's impairments or, if not, does the patient have a combination of impairments which are equally as severe as a person with the problems identified in one of those listings?" [Tr. 209]. Dr. DeBusk, simply checked "Yes." He did not offer any explanation of this conclusion in the lines left for his findings in support of this conclusion, and he did not sign or date the document in the space provided.

On the Medical Assessment Form, Dr. DeBusk was asked a series of short-answer questions about the Plaintiff's ability to lift, stand, and complete other physical tasks. [Tr. 211-12]. On the form, Dr. DeBusk indicated that the Plaintiff could: only occasionally lift 5 pounds and frequently lift 2 pounds; only stand for 30 minutes in an 8-hour day or 15 minutes without interruption; only sit for 30 minutes in an 8-hour day or 15 minutes without interruption; and not climb, stoop, kneel, crouch, or crawl. [Tr. 211-212]. Dr. DeBusk attributed these restrictions to chronic pain and stiffness. Dr. DeBusk indicated that the Plaintiff's ability to reach, handle, feel, push, pull, and see were all limited by pain, stiffness, numbness, tingling, and decreased vision. [Tr. 212]. Dr. DeBusk also assigned the Plaintiff a number of environmental restrictions, *e.g.* no heights, temperature extremes, noise, etc. [Tr. 212].

In regards to Dr. DeBusk's limitations, the ALJ found as follows:

> [N]o weight is assigned to the extreme limitations assigned by Dr. DeBusk as they are wholly inconsistent with the claimant's benign clinical examinations and conservative treatment, which renders [them] less persuasive. The possibility always exists that a physician may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

[Tr. 18].

**B.     Applicable Law**

Pursuant to the applicable statutory provisions, a treating physician's opinion as to the nature and severity of an impairment must be given controlling weight, if is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion.  20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20

C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

**C.    Application of Law to the Issues Before the Court**

In this case, the Commissioner does not dispute that Dr. DeBusk was a treating physician. Thus, the Court must determine, first, whether the ALJ's decision not to afford Dr. DeBusk's opinions controlling weight was supported by substantial evidence, and second, whether the ALJ gave "good reasons" for his decision not to afford the opinions weight.

*1.    The Weight Afforded to Dr. DeBusk's Opinions*

As previously stated, a treating physician's opinion will be afforded controlling weight, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). In this case the ALJ found, that Dr. DeBusk's opinions were "wholly inconsistent with the claimant's benign clinical examinations and conservative treatment . . . ." [Tr. 18].

In regard to the Section 1.02 Form, Dr. DeBusk did not provide any objective findings to support his opinion. [Tr. 209]. A check-mark indicating that the Plaintiff meets the criterion of a listing impairment does not constitute a well-supported opinion, as it provides no support for the opinion. Similarly, the Medical Assessment Form, offers little in the way of clinical or laboratory diagnostic techniques. Instead, the restrictions are based upon Dr. DeBusk's short statement that the

9

Plaintiff has chronic pain and stiffness, which appear to be based on the Plaintiff's subjective complaints. No examinations, x-rays, or other medical evidence were cited in support of the restrictions in the Medical Assessment Form.

Moreover, a review of progress notes from the Plaintiff's visits during the pertinent period do not support a finding of "gross anatomical deformity" or "chronic joint pain" resulting in "inability to ambulate" or "inability to perform fine and gross movements effectively," as required by Section 1.02 of 20 C.F.R. Part 404, Subpart P, Appendix 1, nor do they contain evidence to support the severe restrictions contained in the Medical Assessment Form.

For example, on December 6, 2007, the Plaintiff visited Dr. DeBusk for chief complaint of sinus congestion and arthralgia. [Tr. 260]. Dr. DeBusk diagnosed the Plaintiff as having arthritis, but Dr. DeBusk made no significant remarks on the Plaintiff's physical condition and recommended only that the Plaintiff drink water, use a humidifier, and avoid airborne particles. [Tr. 261]. Similarly, on June 4, 2008, just one month before completing the forms at issue, the Plaintiff visited with complaints of nausea, vomiting, hypertension, arthralgia, hip pain, and anxiety. [Tr. 214]. Dr. DeBusk again found the Plaintiff to be suffering from arthritis, but made no significant remarks about the Plaintiff's physical condition and addressed only the Plaintiff's gastrointestinal and hypertension issues. [Tr. 215].

Further, Dr. DeBusk's opinion is not consistent with the other medical opinions in the record. On September 8, 2006, Wayne Page, M.D., examined the Plaintiff. [Tr. 277]. Dr. Page noted that the Plaintiff gave "no meaningful information when asked about activities of a usual day," was "uncooperative and unreliable," and had "normal mobility [and] normal ability to grasp and manipulate objects." [Tr. 278-79]. The Plaintiff had no difficulty getting on or off the examination

table, and though he carried a cane, Dr. Page was "unable to determine the medical necessity [of the cane]." [Tr. 279]. Dr. Page found the Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. [Tr. 281].

On September 13, 2006, Nathaniel Robinson, M.D., reviewed the medical evidence in the record and concluded that the Plaintiff could lift 50 pounds occasionally and 25 pounds frequently. [Tr. 270]. Dr. Robinson also found that the Plaintiff could stand for 6 hours in an 8-hour day and could sit for 6 hours in an 8-hour day, with normal breaks. [Tr. 270]. Dr. Robinson found no postural limitations [Tr. 271]. Dr. Robinson noted that his opinion was based upon objective findings rather than subjective complaints and explained that the x-rays of Plaintiff's spine were normal and the x-rays of Plaintiff's hip showed only mild arthritic changes. [Tr. 275].

Notwithstanding the above analysis, the Court also notes that disability determinations are reserved for the ALJ. Blanket statements, like Dr. DeBusk's indication that the Plaintiff met the criterion of Section 1.02 [Tr. 209], are legal determinations which fall solely within the ALJ's domain. While medical observations, opinions, and treatments are well within the physician's expertise, the analysis of the claimant's legal disability falls within the ALJ's professional, legal expertise and, accordingly, the disability determination is reserved for the ALJ's judgment. See SSR 96-5p, 61 Fed. Reg 34471, 34472.

In sum, the Court finds that Dr. DeBusk's opinions were not supported by objective medical testing. There is substantial evidence in the record to support the ALJ's conclusion that Dr. DeBusk's opinions, as contained in the Section 1.02 Form and the Medical Assessment Form, were not entitled to controlling weight or any weight at all. The extreme restrictions contained in these forms were not supported by references to objective medical evidence, and they were inconsistent

with the objective medical evidence and other physician opinions in the record. Moreover, Dr. DeBusk's opinions contained decisions regarding disability that fall solely with the ALJ's domain.

B.     *The ALJ's Explanation of the Weight Afforded to Dr. DeBusk's Opinions*

Finally, as noted above the ALJ must give "good reasons" for discounting the opinion of a treating physician. Nonetheless, the Court of Appeals for the Sixth Circuit has held that brief explanations of the reasons for discounting a treating physician may satisfy the "good reasons" requirement. For example, in Allen v. Commissioner of Social Security, 561 F.3d 646 (6th Cir. 2009), the Court of Appeals found that a one sentence explanation of the ALJ's reasoning constituted supplying "good reasons" for the weight afforded to the treating physician's opinions contained in questionnaire responses, id. at 651. The court in Allen explained that while the stated reason was brief it touched upon several of the factors that the ALJ is to consider under 20 C.F.R. § 404.1527(d). Id.

In the present case, the ALJ's discussion of his reasons for discounting Dr. DeBusk's opinions was not an extremely lengthy discussion, but substantively, it identified and discussed many of the statutory factors, including: the amount of relevant evidence that supports the opinion, § 404.1527(d)(3) and the opinion's consistency with the record as a whole, § 404.1527(d)(4).

The ALJ's discussion of Dr. DeBusk's opinions informed the Plaintiff of the ALJ's reasons for discounting Dr. DeBusk's opinions and afforded him the notice and substantive guidance contemplated by the statute. The Court finds that the ALJ complied with the procedural requirements contained in 20 C.F.R. § 404.1527(d)(2) by giving "good reasons" for discounting Dr. DeBusk's opinion.

## V. CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing light work. Substantial evidence supports the ALJ's finding that the Plaintiff could perform light work and the ALJ's conclusion that the Plaintiff could return to past work as an escort driver or other work available in the national and local economies.

Therefore, it is hereby **RECOMMENDED**[3] that Plaintiff's Motion For Summary Judgment **[Doc. 11]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[3]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).